UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OSCAR ENRIQUE NAVARRO GAVALO,<br><br>Petitioner(s),<br>v.<br><br>BRUCE SCOTT, et al.,<br><br>Respondent(s). | CASE NO. C26-3486-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner, representing himself, filed a petition for a writ of habeas corpus, asserting that his re-detention by U.S. Immigration and Customs Enforcement ("ICE") without a hearing violated his right to due process. Dkt. No. 1. After reviewing the petition and the Government's[1] return, the Court finds that further briefing is not necessary. The Court will grant Petitioner's habeas petition and order his immediate release.

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela who, in January 2024, applied for admission at the Calexico, California border. Dkt. No. 8 ¶¶ 4–5. U.S. Customs and Border Protection determined that Petitioner was inadmissible and served him with a notice to appear charging him as an "arriving" noncitizen under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), and ordering him to appear before an immigration judge on September 22, 2025.

[1] This order refers to the federal Respondents collectively as "the Government."

Dkt. No. 9-3. That same day, Petitioner was paroled into the United States for two years, pending his removal proceedings.[2] Dkt. No. 8 ¶ 7.

On March 6, 2024, Petitioner appeared for an initial master calendar hearing in his removal proceedings in Denver. Dkt. No. 8 ¶ 9. At that hearing, Petitioner requested a continuance and the immigration judge granted the request. *Id.* In May 2024, Petitioner filed an application for asylum, and that application remains pending. Dkt. No. 1-1 at 10–22. Petitioner applied for work authorization, and the request was approved through January 12, 2030. *Id.* at 24. The immigration court sent Petitioner a notice of a July 19, 2027 hearing on November 6, 2025, to his Denver address on file, but the notice was returned as undeliverable. Dkt. No. 8 ¶¶ 10–11.

On September 8, 2026, ICE officers encountered Petitioner during an enforcement operation in Oregon and during a records check, realized that he failed to report to the Denver ICE office or provide an updated address in Oregon. Dkt. No. 9-1 at 3. Based on this information, the officers issued a warrant and arrested Petitioner. *Id.* Petitioner was transferred that day to the Northwest ICE Processing Center in Tacoma, Washington, and remains in custody there. Dkt. No. 8 ¶ 15. Petitioner has not requested a bond hearing. *Id.* ¶ 18. Petitioner has no criminal history. Dkt. No. 9-1 at 4.

Petitioner filed this action on September 17, 2026, contending that his detention without a hearing violates his constitutional right to due process. Dkt. No. 1. The Government filed a return arguing that Petitioner is an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b) because his parole expired and therefore automatically terminated in January 2026. Dkt. No. 7 at 7–8. The Government also contends that Petitioner was not entitled to a pre-deprivation

[2] The Government did not file any original parole document, submitting only a search result from what appears to be a public Customs and Border Protection website. Dkt. No. 9-2.

hearing, nor is he entitled to a post-deprivation hearing, and that his detention therefore comports with due process. *Id*. at 8–10.

For the following reasons, the Court disagrees with the Government and will grant the habeas petition.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner received the process appropriate to his circumstances.

**A. Petitioner Is Not Subject to Mandatory Detention.**

To determine whether Petitioner's detention complies with due process, the Court must first determine the statutory authority governing Petitioner's detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

Noncitizens may be "parole[d] into the United States temporarily … on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Parole is, however, "not [to] be regarded as an admission of the [noncitizen.]" 8 U.S.C. § 1182(d)(5)(A). Instead, once the purposes of parole are achieved, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

Department of Homeland Security ("DHS") regulations set forth conditions under which the DHS Secretary and his delegees may grant and terminate parole. *See* 8 C.F.R. § 212.5. Those regulations specify that DHS may either "automatically" terminate parole or terminate parole "[o]n notice." *Id.* §§ 212.5(e)(1), (e)(2)(i). Parole terminates automatically and without written notice where the noncitizen departs the United States, or, "if not departed, at the expiration of the time for which parole was authorized." *Id.* § 212.5(e)(1). In all other instances, parole "shall be terminated upon written notice to the [noncitizen]." *Id.* § 212.5(e)(2)(i).

Although the Government asserts that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) as an "applicant for admission" because his parole expired (Dkt. No. 7 at 6–8), many courts have rejected the application of Section 1225(b) to a noncitizen such as Petitioner, who was previously released on humanitarian parole and has been living in this country for nearly three years. *See, e.g.*, *Baptiste v. Bondi*, No. CV 26-02586 PHX SPL (CDB), 2026 WL 1684433, at *5 (D. Ariz. May 21, 2026) (collecting cases); *Raj v. Mullin*, No. C26-1323-KKE, 2026 WL1300423, at *3 (W.D. Wash. May 12, 2026) ("Courts throughout this circuit have found that where a noncitizen's parole has expired, and the Government makes no effort to re-detain the noncitizen after expiration despite opportunities to do so, the noncitizen's liberty interest continues to grow post-expiration and is incompatible with mandatory detention."); *Astafev v. Warden*, *Otay Mesa Det. Ctr.*, No. 3:26-cv-00313-RBM-AHG, 2026 WL 654247, at *4 (S.D. Cal. Mar. 9, 2026) (rejecting the Government's argument that the expiration of parole automatically extinguishes any due process claim).

Moreover, the Court notes that the Government's contemporaneous documentation of Petitioner's arrest does not cite the expiration of his parole as the reason for his arrest and detention. Instead, it notes that Petitioner had failed to report to the Denver ICE office or provide an updated address. Dkt. No. 9-1 at 3. The Court will not credit the Government's *post hoc* justification for his arrest.[3] *See Abreu-Guerrero v. Chestnut*, No. 1:26-cv-06959-DAD-SCR, 2026 WL 2664618, at *1 (E.D. Cal. Sep. 10, 2026) (rejecting the Government's "*post hoc* rationalization as part of an

[3] This discrepancy is one basis on which to distinguish *Kleber Vasquez v. Hernandez*, which the Government cites repeatedly in its return. No. 2:26-cv-02873-TMC, 2026 WL 2936770 (W.D. Wash. Sep. 30, 2026). In that case, the petitioner's parole expired three months before she was arrested for a domestic violence offense, and she was transferred to NWIPC upon her release from jail. *Id.*, at *1. While the *Kleber Vasquez* court found that the Government had not acquiesced in the petitioner's ongoing liberty after her parole expired, here ICE did not cite parole expiration as the contemporaneous justification for Petitioner's arrest eight months post-expiration. The Court finds that here, on this record, the Government did acquiesce in Petitioner's ongoing liberty, given that the Government did not apparently recognize that Petitioner's parole had expired until after he was already detained. The Government's acquiescence in Petitioner's continued presence in this country is further manifested by its extending Petitioner's removal proceedings and granting work authorization beyond the expiration of Petitioner's parole.

unlawful 'detain first, justify later' approach to people's liberty" (quoting *Betancourt Ulloa v. Warden, Calif. City Corr. Ctr.*, No. 1:26-cv-03360-DAD-CKD, 2026 WL 2389805, at *3–4 (E.D. Cal. Aug. 17, 2026)). Moreover, because the Government has not submitted Petitioner's original parole document, it is not clear that failing to update his address or report to the Denver ICE office violates the terms of his parole, although the Government justifies Petitioner's arrest on these bases. Dkt. No. 7 at 6; Dkt. No. 8 ¶¶ 12–13.

Because the Government has failed to establish that Petitioner is properly subject to mandatory detention, the Court will consider the *Mathews* factors to determine whether Petitioner's detention comports with due process.

**B. Petitioner's Re-Detention Does Not Comport With Due Process.**

*1. Petitioner has a Protected Interest in his Liberty.*

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Here, Petitioner was released on parole in January 2024 and had been living freely in his community for more than two years before he was detained. The Government authorized Petitioner to work until January 2030 and granted his request for a continuance of his removal proceedings until 2027, beyond the expiration of his parole, and these facts demonstrate that Petitioner's reliance on his freedom is reasonable. *See, e.g.*, *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). The Court finds that Petitioner's interest in his continued liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Accordingly, the first *Mathews* factor favors Petitioner.

2. *The Risk of Erroneous Deprivation of Liberty Is High.*

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing is high. Although the Government contends that "ICE followed the parole regulations and returned Petitioner to the custody from which he was paroled after expiration" (Dkt. No. 7 at 9), the Court again notes that ICE agents did not cite parole expiration when they arrested Petitioner. Instead, they justified his arrest based on his failure to report to the Denver ICE office or update his address, assuming (without evidence) that he had moved to Oregon. The Government has not cited any documentation indicating that Petitioner was required to report to the Denver ICE office or notify ICE when leaving Colorado for any reason, or any other conditions placed on Petitioner; as noted earlier in this order, the Government has not submitted the original documents describing any conditions placed on Petitioner's parole. The Court finds that the complete lack of pre-deprivation process, compounded by the Government's conflicting justifications for Petitioner's arrest and detention, leads to a high risk of erroneous deprivation.

The Court thus finds that the second *Mathews* factor favors Petitioner.

3. *The Government's Interest in Civil Detention Without Process Is Low.*

In applying the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without process.

The Court finds that the Government's interest in re-detaining noncitizens previously released without process is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so;

but its interest in doing so without a hearing is low."). The third *Mathews* factor thus favors Petitioner.

Accordingly, the Court finds that Petitioner's due process rights have been violated.

## III. REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional re-detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

## IV. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS that no later than October 7, 2026, Petitioner shall be released from custody on reasonable conditions of supervision. The Government shall file a status report no later than October 8, 2026, confirming Petitioner's release in compliance with this order.

Dated this 6th day of October, 2026.

Kymberly K. Evanson
United States District Judge